## RHOADES *vs.* PARKER.

Where an individual conveyed a farm, and at the same time took a bond, and a mortgage of the farm, to secure the support and maintenance of himself and his wife, and a daughter who was *non compos*, during their lives, and the life of the survivor—*Held*, that it was to be inferred that the mortgager was to remain in possession until the condition was broken, or the security impaired by waste.

The mortgager, after the death of the mother, contracted for the support of the father and daughter at the house of a third person, to which they removed without objection, and remained there until the decease of the father—*Held*, that the condition was fulfilled by continuing to furnish suitable support for the daughter at that place.

The daughter, after the death of her father, left the place thus provided, and went to a distant town, where she became chargeable to the town as a pauper; and notice was given, by the selectmen of that town, to the selectmen of the town where she had resided and had her settlement, who brought her back, and requested the mortgager to support her and pay the expenses incurred, but he refused to pay them—*Held*, that the refusal of the mortgager to pay the expenses did not constitute a breach of the condition, there being no evidence that he was in fault, and the town being strangers to the contract for her support.

But the selectmen having obtained the authority of her guardian, for that purpose, and having then made an application to him to support her, to which he replied that he thought it best to have a trial about it; that his counsel had told him he had better let the town support her, and bring an action against him, and he would then have a better chance in a controversy with those with whom he had contracted for her support—*Held*, that this was evidence of a refusal to support, and of a breach of the condition, and that it was not necessary, after a refusal, to carry her to his house, or to the place provided by him, and make a demand of the support there.

WRIT OF ENTRY. The declaration alleged a seizin, by the plaintiff, in mortgage, of a farm in Marlborough, and a disseizin by the defendant. Plea, *nul disseizin.*

To maintain the action the plaintiff's counsel introduced a mortgage deed, dated May 6, 1820, executed by the defendant to Ebenezer Rhoades, Sarah Rhoades, and the plaintiff, Anna Rhoades; with a condition that if the defendant should support the grantees, agreeable to the true intent and meaning of a certain bond, by him signed, of even date, during their natural lives, and the life of the survivor, the mortgage

should be void.    The condition of the bond was in similar terms.

It appeared that said Ebenezer, on the same day the mortgage was executed, conveyed the farm to the defendant, who has resided thereon ever since.    Ebenezer and Sarah Rhoades have both deceased.

Some years since, the wife having died, the defendant provided for the support of the plaintiff, and her father, the said Ebenezer, at one Jonathan Bemis', in Marlborough, and in pursuance of that agreement they lived with Bemis until the decease of said Ebenezer.

After that time, and about three or four years since, the plaintiff, who is under guardianship as a person *non compos*, left Bemis' house, and went to the town of Antrim.    In the autumn of 1836, the selectmen of Antrim notified the selectmen of Marlborough that she was then supported as a pauper in that town; and the selectmen of Marlborough thereupon requested the defendant to provide for her, upon which he stated that he had made a contract with Bemis for her support, and requested the selectman who notified him to go to Mrs. Bemis, who is the sister of the plaintiff and the widow of said Jonathan, and see if she would not take her without his being at any trouble, which was done ; but she declined, on the alleged ground that the contract was only for a limited time, which had expired.

In November, 1837, the selectmen of Marlborough removed the plaintiff from Antrim, and have since provided for her support at the expense of the town.    Before removing her, one of the selectmen asked the defendant if they should bring her to his house.    The defendant acknowledged that he was bound to provide for her support, and said they might fetch her to his house, and he would then send them with her to Bemis', and if the Bemises would not take her he would. But in consequence of the defendant's declining to pay the expense to which the town had been subjected, she was not carried to his house.

At another time the defendant, on being applied to on the subject, said he thought it best to have a trial about it—that his counsel told him he had better let the town support her, and bring an action against him, and he would then have a better chance to get her on to the Bemises. But there was no evidence that he had ever said he would not support her if they brought her to his house.

The selectmen having obtained the consent of her guardian, and one of the foregoing applications having been made after that consent was obtained, on the second of January, 1838, brought this action, which is prosecuted for the benefit of the town.

A verdict was taken by consent, for the plaintiff, judgment to be entered thereon, or the verdict to be set aside, and judgment entered for the defendant, if such should be the opinion of the court upon the foregoing case.

*Handerson,* for the plaintiff.

*Edwards, & Chamberlain,* for the defendant.

PARKER, C. J. This action cannot be supported unless there has been a breach of the condition of the mortgage. The farm embraced in it was conveyed to the defendant by Ebenezer Rhoades, one of the mortgagees, on the same day that the bond was taken and the mortgage executed, to secure the support of himself and his wife and daughter during their lives; and this sufficiently indicates that the defendant was to remain in possession until the condition was broken or the security impaired by waste. *Flanders* vs. *Lamphear, Grafton, July,* 1838; 9 *N. H. Rep.* 201.

If the mortgagees might enter immediately after the execution of the mortgage, and exclude the mortgager until he had performed the condition, that is, during the lives of all the mortgagees, it would doubtless defeat the intention of the parties, and probably deprive the mortgager of the very means

by which it was understood he was to be enabled to fulfil the condition of his bond.

The enquiry is, therefore, whether there has been any breach of the condition.

It was not necessary that the mortgagees should be supported upon the place itself, (9 *N. H. Rep.* 201 ;) and the arrangement which was made for the support of the father and the plaintiff, at the house of Bemis, having been made with her consent, or that of those who acted for her, the support was well furnished at that place. No objection or complaint appears to have been made on that account.

The case does not state how the plaintiff left the house of Bemis, nor show that it was incumbent on the defendant to bring her back.

There is nothing in the case to show that he is liable for her support at Antrim. Neither she, nor any one acting in her behalf, or in virtue of her rights, could require him to support her there. If the obligation to maintain her, she being *non compos mentis*, might be construed to require him to take reasonable precaution against her wandering away, and to provide for her return, on notice, in case his precautions were ineffectual ; there is no evidence to show a neglect on his part in these particulars, and he might well refuse to pay the expenses incurred by the town. And, moreover, the selectmen and the town were strangers to the contract between Rhoades and the defendant ; and if the contract had been broken could not have enforced the performance of the defendant's engagements, or have maintained any action.

Nor did the answer of the defendant, when application was first made to him by the selectmen after her return, amount to a breach of the condition. He said they might bring the plaintiff to his house, and he would then send them to Bemis', and if they would not support her he would. It may be questioned whether the selectmen had any such authority, at this time, as that the defendant was bound to regard or answer their application. But, assuming that they

Rhoades *v.* Parker.

were then lawfully acting as the agents of the plaintiff, there was no denial of his liability by the defendant.

He assented that they should bring her to his house, and proposed to them to make a demand upon some other person as well as himself, and in case that was not effectual, to comply with the requisition upon himself. Whether he could have required them to bring her, as he proposed, is an immaterial question. They did not decline to do so, and did not follow up the application, on account of a controversy about the expenses incurred, which he was not liable to pay.

But the defendant's answer to a subsequent application, made under the authority of the plaintiff's guardian, that he thought it best to have a trial about it, and that his counsel had advised him to let the town support her, and bring an action against him, and he would then have a better chance to get her on to the Bemises, is evidence of a refusal. It was equivalent to a declaration that he should contest the liability, on account of some advantage that he supposed he should derive, from so doing, in another controversy. It was not necessary that he should say, in terms, that he would not support her. To have carried her to his house, or to the place provided by him, and made a demand, after a refusal, would have been an unnecessary ceremony. There must, therefore, be

*Judgment on the verdict.*